## AFFIDAVIT IN SUPPORT OF
## A CRIMINAL COMPLAINT

I, Andrew Erdmann, being duly sworn, depose and state the following:

### INTRODUCTION AND AGENT BACKGROUND

1.  I am a Special Agent and Certified Explosives Specialist with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). I have been so employed since December 2016. I have a bachelor's degree in criminal justice from the University of South Alabama and a master's certificate in explosives forensics from Oklahoma State University. I have previously served as a police officer and detective for six years with the Mobile Police Department in Alabama.  During this time, I was involved in numerous search and arrest warrants. I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy located in Glynco, Georgia, the Federal Law Enforcement Training Center, Criminal Investigator Training Program, and the ATF Special Agent Basic Training Academy. I have received instruction and training as a Law Enforcement Officer including training regarding firearms, the execution of search and arrest warrants, investigative techniques, and instruction on state and federal criminal law. I make this affidavit in my official capacity as a Special Agent with the ATF.

2.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses and others associated with this investigation. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrant and does not set forth all of my knowledge about this matter.

3.  Based on the facts set forth in this affidavit, there is probable cause to believe that violation of 18 United States Code 922(o), Illegal Possession of a Machine Gun, has been committed by **ISHMELL JARAH WILLIAMS** in the Southern District of Alabama.

## PROBABLE CAUSE

4.     During July 2023, I began investigating several recoveries of machine gun conversion devices (devices) within the city of Montgomery, Alabama. The investigation continued into 2024 and includes cases involving both the possession and distribution of these devices. The devices include both metal devices and 3-D printed plastic devices.

5.     The devices were located on Glock pistols and AR type rifles and pistols, which were originally manufactured as semi-automatic firearms. The devices manufactured for Glock pistols are commonly referred to as "Glock switches" or "boxes," because one variant, which is box shaped and protrudes from the rear of the slide, allows the user to switch between semi-automatic and automatic firing. Another variant for Glocks is referred to as "invisi-switch" or "invisible" because the device appears to be a standard Glock slide cover and does not protrude from the rear of the slide.

6.     The "invisible" type devices do not allow the user to switch between semi-automatic and automatic firing, and once installed only allows the firearm to function as a machine gun. The "invisible" type devices are commonly made of 3-D printed plastic. The devices for AR type firearms are commonly referred to as "drop-ins" and "auto-sears." Some individuals mistakenly use "switch" and "drop-in" interchangeably to refer to both Glock and AR type devices. When installed properly, the device causes the firearms to function as machine guns.

7.     Title 26 of the United States Code defines a machine gun as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger," and also includes "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun." The machine gun conversion devices are themselves therefore a "machine gun" for the purposes of Title 26.  The statutes also require that such firearms

and conversion devices contain serial numbers and be registered to the possessor in the National Firearms Registration and Transfer Record (NFRTR). A machine gun must contain a serial number to be registered in the NFRTR.  None of the conversion devices known to have been recovered in the Montgomery area have contained serial numbers.

8.      During late August 2024, I was engaged in law enforcement activities with the Metro Area Crime Suppression Detail (MACS). This detail is comprised of several law enforcement agencies, including ATF, the Alabama Attorney General's Office, the Alabama Law Enforcement Agency (ALEA) and State Bureau of Investigation (SBI), Montgomery Police Department (MPD), and the Montgomery County Sheriff's Office (MCSO).

9.      During this particular date, SBI Special Agents (SA) Don Carter and Eric Tucker, along with ALEA Trooper James Hendrix conducted a traffic stop on a vehicle driven by a person who will be identified here as a confidential source (CS). During the course of the stop, the CS was found to be in possession of an AR type firearm. Upon further investigation, the firearm was found to be equipped with a "drop-in" type device. I responded and assisted further with the investigation. I conducted a field examination of the firearm and found it to function as a machinegun. I observed the device in the firearm to be 3D printed and gold in color. The device was not identified by a serial number as required by law.

10.      SA Carter and I conducted an interview with the CS. During the interview, the CS identified a black male they only know as "Jarah" as the person from whom they obtained the device. The CS said Jarah resides in Evergreen, Alabama, and that they purchased the device at Jarah's residence. The CS was provided with a map, at which point they directed agents to Jarah's residence. The residence was identified as 604 Dr. Martin Luther King Jr. Drive, Evergreen, Alabama. An open-source records search identified black male **ISHMELL JARAH**

**WILLIAMS**, D.O.B: 02/12/2003 as being a probable resident at the location. The CS was provided with Williams' Alabama driver's license photo, at which point they identified him as Jarah. The CS said they have previously contacted Williams on Facebook, but at the time of the interview, the CS was unable to locate the account or any corresponding communications.

11.    The CS said they purchased the device from Williams during mid-2024. The CS said they observed Williams with a bag containing over fifty (50) devices. The CS also said they have seen Williams with devices during other occasions and have been present when he modified the devices and test fired them. The CS said Williams uses a 3D printer to manufacture the devices. The CS said they have also seen Williams with metal devices but was unsure if he manufactures them at his residence.

12.    I asked the CS to describe the finish of the metal devices, which they described as not being smooth. Through my training and experience, I know that commercially manufactured metal devices typically have a smooth finish, whereas metal devices manufactured by an individual typically have a more crude or unfinished appearance.

13.    After interviewing the CS, agents continued investigating Williams. Investigators located a Facebook page identified by vanity name "Smg Solja." Under the introduction section of the page, the name "SNAP.jarah1234" can be seen. The page identifies the account holder's employer as "MLK 4way" and pronunciation of the holder's name as "JA-rah WIL-yems".

14.    The CS contacted me after the interview, and said they located Facebook Messenger communications between themselves and Williams. I observed the account the CS communicated with to be Williams's "Smg Solja" account. During October 2023, Williams sent the CS a picture depicting approximately twenty-five to thirty (25-30) gold in color AR type devices. The devices appeared to be the same as the device located in the CS's firearm. Williams

also sent a video of a person who appears to be him, in which he can be seen discharging an AR type firearm that appears to be functioning as a machinegun. The CS was directed to contact Williams via Facebook Messenger, to inquire about an additional device. During the communication, the CS asked about metal devices, to which Williams responded "100 fa da metal" ($100 for a metal device).

15.     On September 18, 2024, I requested a search of the NFRTR be conducted in reference to Williams. No records were located which identify firearms registered to Williams, or a license allowing him to manufacture or distribute NFA firearms.

16.     On September 20, 2024, I obtained a federal search warrant for 604 Dr Martin Luther King Jr Drive. The search warrant was executed on September 24, 2024. Upon making entry into the residence, agents made contact with several occupants within the residence, including Williams. While securing the residence, agents observed a gold in color AR type device on a shelf in a bedroom which Williams later identified as his bedroom. The device was observed to be similar in every way to the device recovered from the CS.

17.     During a search of the residence, law enforcement located several items of interest. A 3D printer loaded with gold in color filament was located in the living room. Forty-five (45) gold in color AR type devices were located in the hallway outside of Williams's bedroom door. Additional 3D printed and metal AR type devices were located within Williams's bedroom. Additional items related to 3D printing were located inside the room, as well as a casting mold and casting sand for manufacturing metal products. An AR type pistol, an AK type rifle, several rounds of ammunition and firearm accessories were located within Williams's bedroom. Law enforcement also found approximately four ounces of suspected marijuana, 1.6 grams of suspected methamphetamine, approximately thirty-five grams of suspected MDMA,

and a scale within Williams's bedroom. The narcotics and paraphernalia are consistent with the distribution of narcotics.

18.     During the search of the residence, approximately seventy-four (74) 3D printed and metal devices were located. Law enforcement also located a furnace and other forging equipment under the carport, next to a door that opens into Williams's bedroom. The recovered metal devices were found in various states of completion. Some of the metal devices included excess metal backing consistent with metal casting and would require trimming to become functional. Other metal devices were found to be complete and included markings consistent with the removal of excess metal formed during the casting process.

19.     Williams was detained while the residence was searched. SA Carter and I conducted an interview with Williams during the search. SA Erdmann advised Williams of his *Miranda* rights, to which he said he understood and agreed to speak. Williams denied any knowledge of manufacturing or distributing any devices. Williams also initially denied knowledge of any devices within the residence. When confronted with the messages sent by the "Smg Solja" account, Williams denied sending them. Williams did admit that the 3D printer located within the residence is his. Williams first said he has not used the 3D printer in approximately five years, then later changed his statement to using it approximately two to three years ago. Williams said he uses the printer to make items such as "smoke rings" and gaming controller buttons. It should be noted, law enforcement located 3D printed smoke rings in Williams's bedroom, which are the same color as the AR type device recovered from the CS and the additional devices located in Williams's bedroom.

20.     Williams made statements about his knowledge of devices and their functionality but said he has never discharged a firearm equipped with such a device. In reference to the 3D

printed device located on the shelf in Williams's room, Williams said he believes another individual placed the device in his room but refused to identify that individual. Williams also admitted to seeing devices in the past, including the device located on his shelf. Williams then said he paid known associate "Jr Boss" two-hundred dollars ($200.00) for the AR type device located on the shelf in his bedroom. Williams said he never used the device. Williams then described a time when he discharged a firearm that functioned as "burst fire." It should be noted that "burst fire" or "three round burst" firearms are also classified as machineguns.

21.     On September 25, 2024, ATF Firearms Enforcement Officer (FEO) John Miller conducted examinations of some of the devices recovered from Williams's residence. The selected 3D printed and metal AR type devices, when inserted into an AR type firearm, caused the firearm to function as a machinegun. The selected 3D printed Glock type devices, when installed on a Glock pistol, did not cause the firearm to function as a machinegun, but will be classified as such due to their construction. FEO Miller's official reports will be available at a later date.

22.     On September 25, 2024, Evergreen Police Department (EPD) Investigator Joshua Jackson contacted me. Investigator Jackson said he located an AR type firearm that is in EPD's possession. Investigator Jackson said the firearm is listed as being recovered from Williams. Investigator Jackson conducted a video call with me, at which point I observed a gold in color 3D printed AR type device in the firearm recovered from Williams.

23.     Based on the evidence obtained during the search warrant and throughout the investigation, there is probable cause to believe that **ISHMELL JARAH WILLIAMS** violated 18 United States Code 922(o), Illegal Possession of a Machinegun. Accordingly, I respectfully request that the Court issue a criminal complaint and an accompanying arrest warrant for

**ISHMELL JARAH WILLIAMS**.

Respectfully submitted,

**Andrew
Erdmann**

Digitally signed by
Andrew Erdmann
Date: 2024.09.26
07:30:40 -05'00'

ANDREW ERDMANN
Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF)

THE ABOVE AGENT HAD ATTESTED
TO THIS AFFIDAVIT PURSUANT TO
FED. R. CRIM. P. 4.1(b)(2)(A) THIS
_____26th_____, SEPTEMBER _____, 2024.

HONORABLE P. BRADLEY MURRAY
UNITED STATES MAGISTRATE JUDGE